# FOR PUBLICATION



ATTORNEY FOR APPELLANTS:

**JERE L. HUMPHREY**
Wyland, Humphrey, Wagner & Clevenger, LLP
Plymouth, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

GUNTHER KRANZ and CAROL KRANZ,              )
                                            )
    Appellants-Petitioners,                 )
                                            )
        vs.                             )     No.  75A03-1112-PL-577
                                            )
MEYERS SUBDIVISION PROPERTY                 )
OWNERS ASSOCIATION, INC.,                   )
CHRISTOPHER BARTOSZEK, and INDIANA          )
DEPARTMENT OF NATURAL RESOURCES,            )
                                            )
    Appellees-Respondents.                  )

APPEAL FROM THE STARKE CIRCUIT COURT
The Honorable Roger V. Bradford, Judge
Cause No. 75C01-1102-PL-2

**August 28, 2012**

**OPINION ON REHEARING - FOR PUBLICATION**

**CRONE, Judge**

Gunther and Carol Kranz petition for rehearing in the case of *Kranz v. Meyers Subdivision Property Owners Association*, 969 N.E.2d 1068 (Ind. Ct. App. 2012). We grant rehearing solely to clarify why we believe that our interpretation of a regulation promulgated by the Department of Natural Resources ("the DNR") is consistent with that of the agency's. Therefore, we reaffirm our original opinion in all respects.

**Facts and Procedural History**

The Kranzes own property on Bass Lake that is subject to an easement by other landowners in the Meyers Subdivision ("the Subdivision"). In prior, separate proceedings, the Natural Resources Commission ("the NRC") determined that the easement holders had the right to place a pier at the end of the easement, but they would have to apply for a permit for a group pier ("the Group Pier") from the DNR. The DNR initially denied the permit, and the easement holders requested a hearing before an administrative law judge ("the ALJ"), who determined that the easement holders should be allowed to have a group pier and that the Kranzes should move their pier to accommodate the Group Pier. The Kranzes appealed to the NRC, which adopted the ALJ's decision.

The Kranzes then sought judicial review in the Starke Circuit Court. The Kranzes advanced four reasons for reversing the NRC's decision: (1) that the NRC lacked jurisdiction to determine property rights; (2) that the decision was arbitrary and capricious because the NRC did not follow its own rule; (3) that the decision was not supported by

substantial evidence; and (4) that the decision effected an unconstitutional taking. The trial court affirmed, and the Kranzes appealed to this Court.

On appeal, we held that: (1) the NRC has jurisdiction to render a decision concerning property rights to the extent necessary to implement the permit process; (2) that the NRC properly interpreted and applied its own rule; (3) that the evidence favorable to the decision supported the NRC's ruling; and (4) that there was not an unconstitutional taking of the Kranzes' property. *Id*. at 1080.

The Kranzes filed a petition for rehearing in which they argue that our interpretation of the DNR regulation at issue is not consistent with the way in which the agency interpreted it.[1] Recognizing that an agency's interpretation of its own regulations is typically accorded great weight, we grant rehearing to clarify why we believe that our interpretation of the regulation is consistent with the NRC's. *See Ind. Dep't of Envtl. Mgmt. v. Steel Dynamics, Inc.*, 894 N.E.2d 271, 274 (Ind. Ct. App. 2008) ("[A]n interpretation of statutes and regulations by the administrative agency charged with enforcing those statutes and regulations is entitled to great weight, and the reviewing court should accept the agency's reasonable interpretation of such statutes and regulations, unless the agency's interpretation would be inconsistent with the law itself."), *trans. denied* (2009).

---

[1] The Kranzes raise two additional issues, which we believe were adequately addressed in our original opinion.

## Discussion and Decision

On appeal, the Kranzes argued that the NRC's decision was arbitrary and capricious because it failed to follow one of its own rules, 312 Indiana Administrative Code 11-4-8(c)(1). That rule states:

> (c) The [DNR] shall condition a license for a group pier so the placement, configuration, and maintenance of the pier …:
>
> (1) Provide a reasonable buffer zone between the pier and the:
>
>> (A) portion of the lake two hundred (200) feet from the shoreline or water line; and
>>
>> (B) riparian zone of adjacent property owners to provide for reasonable navigation by the adjacent property owner and by the public. Except as otherwise provided in this clause, the department shall require at least five (5) feet of clearance on both sides of a riparian line (for a total of ten (10) feet). The department may require as much as ten (10) feet of clearance on both sides of a riparian line (for a total of twenty (20) feet) if, based upon the opinion of a qualified professional, additional clearance is required for reasonable navigation. The department may approve an exception to this clause where adjacent riparian owners use a common pier along their mutual property line, and the purposes of this clause are satisfied by waters elsewhere within their riparian zones.

312 Ind. Admin. Code 11-4-8(c)(1).

The Kranzes argued that this rule required ten feet of clearance between each side of the Group Pier and the boundaries of the easement; therefore, because the easement is only fifteen feet wide, the permit had to be denied. We noted that the rule requires only five feet of clearance on each side of a riparian line. We further held that the easement owners did not have their own riparian zone, but merely had the right to use a portion of the Kranzes'

4

riparian rights. *See Kranz*, 969 N.E.2d at 1079 (citing *Klotz v. Horn*, 558 N.E.2d 1096, 1097

(Ind. 1990)). Thus, we explained the application of the rule as follows:

> In *Adochio*,[2] the NRC determined that the easement included the use of
> the Kranzes' riparian rights in the area corresponding to the boundaries of the
> easement. This fifteen-foot area is not a separate riparian zone, but falls
> entirely within the Kranzes' riparian zone. Thus, the references in 312 Indiana
> Administrative Code 11-4-8(c)(1) to riparian lines and zones do not refer to the
> boundaries of the easement, but to the boundaries of the Kranzes' riparian
> zone. Both the Group Pier and the Kranzes' pier are entirely within the
> Kranzes' riparian zone, and both piers are at least five feet from the boundaries
> of the Kranzes' riparian zone.
>
> …. In other words, there must be five feet of clearance between
> Bartoszek's pier and the Bartoszek-Kranz riparian line, and five feet of
> clearance between the riparian line and the Group Pier.[3] On its face, the rule
> does not appear to address the amount of clearance that should exist between
> the Group Pier and the Kranzes' pier, which are both located in the same
> riparian zone. Nevertheless, the NRC created a buffer of approximately
> sixteen feet, which is consistent with the spirit of the rule. Thus, we conclude
> that the NRC correctly applied 312 Indiana Administrative Code 11-4-8(c)(1).

*Id*. at 1079-80.

In their petition for rehearing, the Kranzes argue that the NRC did intend to create a

separate riparian zone for the easement holders. We acknowledge that there are a few

references in the NRC's opinion to the easement holders having a riparian zone; however,

reading the opinion as a whole, we conclude that these references are nothing more than a

few isolated instances of lack of precision in the use of a term of art. The NRC cited and

clearly intended to apply *Klotz*, which held that an easement holder does not acquire riparian

---

[2] *Adochio v. Kranz*, 11 CADDNAR 400, 413 (2008), *available at* www.in.gov/nrc/decision/07-204w.v11.htm.

[3] Bartoszek is the Kranzes' neighbor to the west; the Bartoszek-Kranz property line is also the western boundary of the easement.

rights, but may acquire the right to use the riparian rights of the servient estate. The greater number of the NRC's findings are consistent with *Klotz*. *See e.g.*, Appellants' App. at 12 (stating that the Subdivision holds an easement "which crosses a portion of the lands and the riparian waters of the Kranzes"); *id*. at 13 (again stating that the subdivision holds an easement "over the lands and riparian waters of the Kranzes" and describing the subdivision's riparian rights as "derivative"); *id*. at 15 (setting forth the *Klotz* rule and stating that the easement holders "are not riparian owners"); *id*. at 19 (noting that the parties had stipulated that the "appropriate delineation of riparian zones was described by the straight-line extension of property lines").

The Kranzes argue that paragraph 77 of the NRC's order indicates that it intended to create a separate riparian zone for the easement holders. That paragraph included a diagram of the Kranzes' property, Bartoszek's property, and the easement. A line marked "1" extends from the Kranz-Bartoszek property line (which is also the western border of the easement) into Bass Lake. The text of paragraph 77 contains the following description of line 1:

> This solid line is the straight-line extension into Bass Lake of the common terrestrial property line of Bartoszek Lot 48 and Kranz Lot 49 and depicts the delineation of riparian zones between those properties. In addition, the line depicts the delineation of riparian zones between Bartoszek Lot 48 and the subject easement.

*Id*. at 31. While this comment seems to refer to the easement holders having a riparian zone, it also reflects that that zone is subsumed within the Kranzes' riparian zone. Although this language is not a very precise application of *Klotz*, the end result is essentially correct and consistent with our opinion.

Finally, the Kranzes rely on the statement of contentions that the DNR submitted in the *Adochio* case and the testimony of Lieutenant Shepherd, a conservation officer who had originally recommended denial of the permit for the Group Pier. However, the NRC is the final authority for interpreting the regulation at issue, and as explained above, we believe that our opinion is consistent with how the NRC interpreted it. Therefore, we reaffirm our previous opinion in all respects.

VAIDIK, J., and BRADFORD, J., concur.